## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| DAVID ALBINO, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 13-0105 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 10, 13 |
| | : | | |
| THE UNITED STATES, | : | | |
| | : | | |
| Defendant. | : | | |

## MEMORANDUM OPINION

### DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND GRANTING PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

While deployed in Iraq in 2004, pro se Plaintiff David Albino received a negative Officer Evaluation Report. Plaintiff believes that the evaluation is unjust, inaccurate, and the product of numerous administrative and procedural errors, and he has spent more than a decade attempting to have the evaluation removed from his military records. An Army inquiry into the contested evaluation found that it contained numerous errors and recommended that it be removed. Additionally, two Army administrative boards have collectively ordered six corrections to the evaluation. Nevertheless, the Army Board for Correction of Military Records ("ABCMR") has repeatedly denied Plaintiff's request to remove the evaluation. Plaintiff now brings suit against the United States under the Administrative Procedure Act, 5 U.S.C. §§ 701, *et seq.* ("APA"), arguing that the ABCMR's June 20, 2009, decision denying his application to remove the contested evaluation was arbitrary, capricious, and unlawful. The parties have filed cross-motions for summary judgment. After a searching review of the administrative record and careful consideration of the parties' briefs, the Court grants Plaintiff's motion for summary

judgment and denies Defendant's motion.  The ABCMR's decision is arbitrary and capricious because it failed to respond to several of Plaintiff's non-frivolous arguments and misapplied the presumption of administrative regularity.  The Court will therefore remand to the ABCMR for full consideration of Plaintiff's arguments and evidence without the presumption of regularity.

## II.  FACTUAL BACKGROUND

### A.  Plaintiff's Pre-Iraq Military Career

After serving as an enlisted sailor in the Navy and Navy Reserves, AR 403–07, 412, and graduating from law school at the University of Wisconsin-Madison, AR 445, 447, Plaintiff David Albino, on May 29, 1997, was appointed as a Reserve Commissioned Officer of the Army and assigned to the Judge Advocate General branch, effective June 3, 1997, AR 417.

For the evaluation period of June 3, 1998, to June 2, 1999, Plaintiff's Officer Evaluation Report ("OER") reflected a rating of "Outstanding Performance, Must Promote," and the Senior Rater rated him as "Best Qualified," concluding that Plaintiff's potential, compared to other officers rated in the same grade, was "Center of Mass."  AR 322–23.  For the period June 3, 1999, to June 2, 2000, Plaintiff's OER reflected a rating of "Satisfactory Performance, Promote," and the Senior Rater rated him as "Fully Qualified," concluding that Plaintiff's potential, compared to other officers rated in the same grade, was "Center of Mass."  AR  320–21.  This reflected a lower rating than the previous year.

For the period June 3, 2000, to June 2, 2001, Plaintiff's OER again reflected a rating of "Satisfactory Performance, Promote."  AR 318–19.  Plaintiff's Rater provided mixed comments that, although generally positive, were critical of Plaintiff's failure to meet physical fitness standards.  AR 319.  The OER did not contain comments from a senior rater because Plaintiff's Senior Rater had not served in that position for the requisite number of days.  AR  319.  For the

evaluation period of June 3, 2001, to June 2, 2002, Plaintiff's OER reflected a rating of

"Outstanding Performance, Must Promote," and the Senior Rater rated him as "Best Qualified"

concluding that Plaintiff's potential, compared to other officers rated in the same grade, was

"Center of Mass." AR 314–15.  This rating reflected a return to higher ratings after a two-year

decline, and was followed by another very positive review for the evaluation period from June 3,

2002, to April 16, 2003.  AR 312–13 (reflecting ratings of "Outstanding Performance, Must

Promote," "Best Qualified," and "Center of Mass").  But Plaintiff's rating for the period of May

3, 2003, to October 31, 2003, reverted to "Satisfactory Performance, Promote," although the

senior rater continued to rate him as "Best Qualified" and "Center of Mass."   AR 310–11.  What

happened to Plaintiff's military career subsequently is what is at the center of this litigation.

## B.  Plaintiff's Iraq Deployment

Between December 2003 and November 2004, Plaintiff was mobilized and deployed to

Iraq.  AR 92, 114.  His OER for this time period lists him as an International Law Officer in a

civil affairs battalion assigned to the 1st Infantry Division in Iraq.  AR 136.  Plaintiff, however,

viewed himself as serving in a dual role, as Command Judge Advocate and as an International

Law Officer.  *See* AR 123.  Regardless, while in Iraq, Plaintiff found himself under the command

of Lieutenant Colonel Gregory P. Fischer ("LTC Fischer"), the Battalion Commander.  The

record clearly reflects that this was not a positive relationship.  *See, e.g.*, AR 122, 132, 133, 136–

37, 222, 224.

Two projects that Plaintiff was tasked with while under LTC Fischer's command are

central to the events at issue in this case.  First, in the spring of 2004, Plaintiff was tasked with

putting together a non-governmental organization ("NGO") conference to persuade NGOs to

work in certain areas under the purview of the 1st Infantry Division.  AR 158, 229, 269.  The

record reflects that Plaintiff participated in planning meetings, AR 269, and that when LTC

Fischer sent out invitations to the NGO conference, Plaintiff was listed as the contact person, AR

229.  The conference took place on June 1, 2004, at the Ashur Hotel at Dokan Lake in

Sulaymaniyah, Iraq.  AR 230–31.  The event was portrayed as a success in the 1st Infantry

Division's newsletter.  AR 232–33.  However, the record does not clearly reflect to what extent

the success of the Sulaymaniyah conference was a consequence of Plaintiff's specific

contributions as opposed to the work of others.[1]

Second, in June 2008, Plaintiff was involved in the 1st Infantry Division's efforts to

partner with the Coalition Provisional Authority - North ("CPA-North") in Ibril, Iraq in order to

collect intelligence regarding the movements of internally displaced Iraqis.  AR 127–28, 132,

137.  The record appears to indicate, however, that the 1st Infantry Division and CPA-North

were not on the same page regarding Plaintiff's mission.  AR 125–29, 275–76.  While the 1st

Infantry Division wanted to survey internally displaced persons, AR 127–29, and LTC Fischer

states that Plaintiff was so tasked, AR 137, the Regional Coordinator of CPA-North, Dr. Liane

Saunders, wanted Plaintiff to act instead as a liaison, allowing the 1st Infantry Division to

receive information from the CPA-North staff on displaced persons, AR 125–26, 159.  CPA-

North expressed concern that the 1st Infantry Division's interview efforts would duplicate work

already being done by NGOs, and that it would inappropriately raise either expectations in the

displaced populations that they would receive benefits or fears that they would be evicted.  AR

---

[1]      Major Anthony Bradley submitted a letter of support on Plaintiff's behalf
detailing Plaintiff's hard work and contributions to the success of an NGO conference, but he
describes the conference as one held in Kirkuk on an unspecified date.  AR 121–22.  It is thus
unclear if Major Bradley is referring to the Sulaymaniyah NGO conference at issue in the
contested OER.

129, 159.  Perhaps tellingly, Plaintiff has indicated that he believed the 1st Infantry Division's resources could have been better used elsewhere.  AR 159.

Plaintiff further claims that LTC Fischer's indecisiveness regarding the CPA-North partnership and trip to Ibril resulted in repeated changes in the plans for the trip and contradictory orders regarding whom Plaintiff should brief and when.  AR 92, 141, 159. Specifically, Plaintiff claims that prior to his departure to Ibril, he was told first to brief the G3 Chief of Plans, the Chief of Staff ("Cos"), or both, before departure.  AR 92.  Plaintiff concedes that he did not brief either individual prior to leaving for Ibril on June 11, 2004.  AR 93, 142.  He maintains that he did not ignore orders, however, because on June 9, 2004, Major Gajewski told him that he could coordinate with G3 *after* his arrival in Irbil.  AR 92, 141.  Given the changing plans, conflicting orders, and difference of opinion between the 1st Infantry Division and the CPA-North, Plaintiff asked to be taken off the mission, but that request was not granted.  AR 92, 137, 159.

On June 11, Plaintiff flew to Irbil.  AR 141, 160. Although Plaintiff was instructed to bring a member of G2 with him to Ibril, he did not do so.  AR 130, 160.  Colonel Kamena became angry, believing that Plaintiff's team had purposely left behind a member of the G2, although Plaintiff claims that he had been told no G2 personnel were available to go and that Captain Cook – who did accompany Plaintiff – would cover the intelligence duties of a G2. AR 93, 130.

The Regional Coordinator of CPA-North was displeased with the 1st Infantry Division's intelligence-collecting agenda and the force protection profile required for the visit, which she felt increased the risk for her team.  AR 125.  She therefore suggested that the visit not take place until the differences could be worked out, but she suggested Plaintiff be left behind in Ibril to act

as a liaison between the 1st Infantry Division and CPA-North.  AR 126.  Shortly thereafter,

Plaintiff was told that he and his team should return.  AR 126, 131, 260.  On June 12, one day

after his arrival, Plaintiff returned from Irbil to Tikrit.  AR 260.

On June 14, 2004, LTC Fischer formally reprimanded Plaintiff in writing.  AR 132.  The

reprimand chastised Plaintiff for: not providing weekly reports to G2 on refugees; departing to

Irbil without first briefing either the Chief of Staff or Chief of Operations on the plan to survey

Internally Displaced Civilians, despite Plaintiff's awareness of the potential negative

consequences of failing to brief the Chief of Staff; and asking to be taken off the mission, a

request viewed as counter to duty and the values expected of an officer.  AR 132.  As a result of

these transgressions, Plaintiff was relieved of his ministerial duties and informed that his

assignment would be changed.  AR 132.  On June 22, 2004, Plaintiff was ordered by LTC

Fischer to report to a Civil Affairs unit in Kirkuk by June 23, 2004.  AR 225.

In and around June 27, 2004, Plaintiff began helping a soldier with an issue concerning a

marriage certificate from Texas to be used in support of a hardship request.  AR 289–91.  After

Plaintiff's efforts in this respect were brought to the attention of LTC Fischer, on July 1, 2004,

Fischer sternly ordered Plaintiff to cease his activities and to stop representing himself as the

command judge advocate for the battalion.  AR 288.

### C.  Plaintiff's Officer Evaluation Report for the Iraq Deployment

Pursuant to the above, for the ratings period of December 1, 2003, to June 22, 2004,

Plaintiff's OER ("Iraq Deployment Evaluation" or "evaluation") reflected a rating of

"Unsatisfactory Performance" from Major Wayne B. Doyle.  AR 136–37.  Plaintiff's senior

rater, LTC Fischer, rated him as "Do Not Promote" and, in comparison to his peers, "Below

Center of Mass Do Not Retain."  AR 137.  The narrative portions of Plaintiff's evaluation also

included negative comments.  Major Doyle indicated that, in the two major division efforts with which Plaintiff was entrusted, Plaintiff required assistance and, at times, repeated guidance, and that Plaintiff had to be removed completely from one of the tasks.  AR 137.  Major Doyle further commented that Plaintiff "possesses a disposition to act independently of the chain of command and should not be advanced."  AR 137.

LTC Fischer, as senior rater, added that Plaintiff's performance was less than satisfactory and that he needed constant supervision on two high profile tasks.  AR 137.  With respect to the first effort, the planning and execution of a division NGO conference, LTC Fischer indicated that it would not have been done had it been left to Plaintiff.  AR 137.  With respect to the second effort, collecting information on Iraqi Displaced Persons Camps, LTC Fischer indicated that Plaintiff ignored orders to coordinate the effort and had to be recalled, relieved of his duties, and given a letter of reprimand.  AR 137.  LTC Fischer added that Plaintiff had difficulty distinguishing between the duties of legal assistance to the command and legal assistance to unit soldiers, instead trying to do both simultaneously and clearly stepping outside of his assigned duties.[2]  AR 137.  LTC Fischer concluded that, "[g]iven his inability to follow orders and the requirement for constant supervision, [Plaintiff should not be retain[ed] in the United States Army."  AR 137.  When asked to list the future assignments to which Plaintiff was suited, LTC Fischer listed "none."  AR 137 at Box VII.d.  Immediately above his written comments, LTC Fischer indicated that he had received a completed DA Form 67-9-1 (Officer Evaluation Report

---

[2]      This comment does not explicitly refer to any specific events.  But considering that the evaluation covers a time period up to June 22, 2004, if the comment is in reference to the incident involving the Texas marriage certificate/hardship request that appears to have occurred from roughly June 27 to July 1, 2004, *see* AR 289–91, it inappropriately refers to events outside the ratings period.

Support Form), and that he considered that form in his evaluation and review of Plaintiff.  AR 137 at Box VII.a.

With respect to Plaintiff's physical fitness during the evaluation period, the Iraq Deployment Evaluation indicates that Plaintiff was not in compliance with the Army's height and weight standards.  AR 136 at Box IV.c.  Major Doyle's narrative similarly states that Plaintiff was "flagged for not being in compliance with the standards of [Army Regulation] 600-9,[3]" adding that Plaintiff was unable to take the APFT during the deployment.  AR 137.

The evaluation form indicates that it was not given to Plaintiff but was forwarded to him on July 1, 2004.  AR 136 at Box I.m.  In the spot where Plaintiff was to sign the evaluation form, there is an indication of "Refuses to Sign."  AR 136 at Box. II.e.

Pursuant to Army Regulation, by letter dated August 22, 2004, Plaintiff was informed that he could respond to the above-referenced evaluation documenting unsatisfactory performance and recommending that he not be promoted.  AR 307.  The August 22 letter, which was e-mailed to Plaintiff, indicated that Plaintiff's suspense date – the date by which his response to the evaluation was due – was August 23, 2004 (*i.e.*, the next day).  AR 307.  As documented in LTC Fischer's memorandum dated November 5, 2005, Plaintiff failed to respond to the deployment evaluation by the suspense date.  AR 306.  However, LTC Fischer's memorandum asserted that Plaintiff's suspense date was November 4, 2004, not August 23, 2004, as had been indicated in the August 22 letter to Plaintiff.  *See* AR 306.

### D.  Plaintiff's Post-Iraq Military Career

In subsequent evaluations, Plaintiff's raters characterized his performance as "Outstanding Performance, Must Promote," deemed him "Best Qualified," and recommended his

---

[3]        Army Body Composition Program (previously Army Weight Control Program).

immediate promotion, but Plaintiff's senior raters no longer rated his potential in comparison to his peers, instead leaving empty the designated box.  AR 302–03 (June 22, 2005, to June 21, 2006: "Promote to Major immediately," "In the top 10% of the Captains I rate . . . . [S]hould be promoted immediately."); AR 300–01 (June 22, 2006, to June 21, 2007: "CPT Albino should be promoted to Major immediately."  "He ranks near the top of the CPT's I senior rate." "Promote Immediately."); AR 298–99 (June 22, 2007, to October 19, 2007: "CPT Albino should be promoted to Major immediately," "Promote at first opportunity . . . ."); AR 296–97 (October 20, 2007, to April 7, 2008: "CPT Albino should be promoted to Major immediately."  "Promote immediately and assign to most challenging assignments.").  On June 5, 2007, Plaintiff was informed that a Department of the Army Reserve Components Mandatory Selection Board had not selected him for promotion.  AR 220.

### E.  Plaintiff's Challenges to the Iraq Deployment Evaluation

Plaintiff viewed the Iraq Deployment Evaluation as a career-ending, unjust, and flawed assessment, and he has presented a number of challenges to its validity over the course of the past decade.

### 1.  Request for Commander's Inquiry

On August 28, 2004, six days after he received the referral letter, Plaintiff requested that a Commander's Inquiry be made concerning the Iraq Deployment Evaluation because, in his view, the process was riddled with procedural defects and the evaluation was substantively incorrect.  AR 258–63.  Plaintiff argued that the subjective performance assessment was biased against him because of LTC Fischer's personal vindictiveness and because Plaintiff is of Puerto Rican descent.  AR 259–63.  In the request, Plaintiff raised a number of arguments, including that:

1.      The one-day suspense date was unreasonable.  AR 259 n.1.

2.      The evaluation process was flawed because Plaintiff was a JAG attorney, so a JAG supervisor in his chain of command had to be part of the evaluation process but was not included.  Relatedly, Plaintiff argued that because he was serving under dual supervision (JAG attorney and battalion commander), the two chains had to jointly develop his duty description but did not do so.  AR 262.  Plaintiff also argued that he reported to Major Anthony Bradley, such that MAJ Bradley should have been Plaintiff's senior rater, not LTC Fischer.  AR 259 n.2.

3.      The references to Plaintiff's height, weight, and non-compliance with physical fitness requirements were erroneous.  AR 262.  Plaintiff argued that he had never been weighed or measured during the rating period and that, per regulation, a finding of non-compliance could not be made without first doing a body fat content calculation.

4.      Contrary to the rater's comments, Plaintiff performed his NGO conference-planning duties well, and the conference was well received.  AR 259.

5.      With respect to the criticism he received about the trip to meet with CPA-North, Plaintiff suggested that the mission he was given to perform (*i.e.*, interview displaced person under the guise of surveying settlements) was unwise and duplicated other efforts.  AR 260.  He further argued that, due to LTC Fischer's indecisiveness leading up to the trip, his orders were ever-changing and, in some instances, contradictory.  AR 260.  In addition, Plaintiff characterized LTC Fischer's negative comments as vindictive, attributable to the fact that Chief of Staff Kamena had yelled at LTC Fischer, as well as racial bias.  AR 261.

AR 259–63.

After Plaintiff submitted his request for a Command Inquiry, over three months passed without any word from the Army.  AR 264.  On December 7, 2004, Plaintiff again reached out to get the process going.  AR 264.  Plaintiff noted that, under Army Regulations, swift timeliness requirements applied to such inquiries, and that the inquiry had to be forwarded to Department of Army Headquarters not later than 120 days after the OER's "thru" date, which in this case was June 22, 2004.  AR 264.  In a reply e-mail, Plaintiff was told the inquiry had been delayed because Brigadier General Davidson had been out for the last two months due to back surgery. AR 146.

Several months later, on April 8, 2005, LTC Michael Connell e-mailed Plaintiff stating that he had spent the last couple of days trying to launch the requested commander's inquiry, and that he would ensure that the OER was reviewed.  AR 148.  Plaintiff responded three days later with his thanks and his contact information, reiterating his belief that the results of the inquiry would be favorable, but expressing regret that his OER had been used as a "personal vendetta tool," and that the Army had ignored its own timeliness regulations for so long.  AR 149. Despite LTC Connell's assurances that an investigation would begin, nothing happened for 20 more months.

Finally, on December 8, 2006, Colonel Mark Hendrix appointed Colonel Gary Bromske to conduct an informal 15-6 Investigation into Plaintiff's allegations.  AR 172.  Although styled as a 15-6 Investigation, it was considered an equivalent to a Commander's Inquiry for purposes of Plaintiff's appeal.  AR 171.  Colonel Bromske forwarded his findings and recommendations to Colonel Hendrix on January 5, 2007, and Hendrix, in turn, forwarded them to the Human

Resources Commander on January 28, 2007 (nearly two and a half years after Plaintiff's original request).  AR 169–71.

As part of the Commander's Inquiry, Plaintiff was interviewed twice, and LTC Fischer also provided input.  AR 173.  The Inquiry resulted in a number of findings, including:

1.  Plaintiff was not given enough time to respond to the referred Iraq Deployment Evaluation because it was e-mailed to him on August 22, 2004, with a one-day suspense date.  AR 169, 174, 176.

2.  The November 2005 memorandum prepared by LTC Fischer incorrectly stated that Plaintiff's suspense date had been November 4, 2004, rather than the one-day suspense date of August 23, 2004, reflected in the referral e-mail.  AR 169, 176.

3.  The delay in initiating a Commander's Inquiry, despite Plaintiff's repeated requests, violated his due process rights.  AR 169, 176–77.

4.  Although MAJ Doyle was Plaintiff's rater on the disputed evaluation, he was not the best officer to rate Plaintiff because he did not have daily interaction with him.  MAJ Bradley was Plaintiff's daily supervisor, and the original rating scheme listed MAJ Bradley as Plaintiff's rater.  AR 169, 178.

5.  Despite the Evaluation form indicating that LTC Fischer received a support form from Plaintiff and considered it in his evaluation and review, there was no such form.  AR 169, 174, 178.

6.  Someone other than Plaintiff placed an "x" in the box indicating that Plaintiff did not wish to make comments on the report.  AR 170.

7.  The height and weight data included on the Evaluation form was erroneously incorporated from a prior evaluation and incorrectly noted that Plaintiff was non-

compliant with the Army's height and weight standards.  If a soldier was over the published weight limits given his height, he needed to be measured for body-fat to determine non-compliance with the overall standards, but such measurement did not take place.  AR 170, 173, 178–79.

The Commander's Inquiry also stated that although the Evaluation's contents were supported by the chain of command, the Evaluation itself "seems to have been influenced by intense pressure by COL Kamena" exerted on LTC Fischer and MAJ Doyle.  AR 173–74.  However, the Commander's Inquiry did not corroborate or sustain Plaintiff's claims of racial or ethnic discrimination, determining that there was no reasonable support for this allegation.  AR 179.

Based on these findings, the Commander's Inquiry recommended that the disputed Iraq Deployment Evaluation be removed from Plaintiff's official military personnel file, and that the period covered by the removed report be designated as non-rated.  AR 170, 182.  Legal Review of the Commander's Inquiry concluded on April 5, 2008, and found that the Inquiry's findings were supported by sufficient evidence and that the recommendations were consistent with those findings.  AR 183.

## 2.  Complaint to Inspector General

On or about June 17, 2005, when the requested Commander's Inquiry still had yet to begin, Plaintiff sought assistance concerning the Iraq Deployment Evaluation from the Department of the Army's Office of Inspector General.  AR 151–52.  That office, however, deemed it inappropriate for an inquiry because Plaintiff had other avenues of appeal that must be utilized – specifically, the officer evaluation report appeal.  AR 153.

### 3.   Appeal of Officer Evaluation

On October 13, 2006, nearly two years after Plaintiff first requested a Commander's Inquiry that still had yet to begin, Plaintiff formally appealed the Iraq Deployment Evaluation to the Officer Special Review Board ("OSRB" or "Review Board").  AR 239–52.  On the basis of the delayed Inquiry alone, Plaintiff argued that the Iraq Deployment Evaluation should be deleted from his military record.  AR 239.  Additionally, Plaintiff again claimed that LTC Fischer's negative review was motivated by vindictiveness and racial bias. AR 240–51.  Plaintiff also raised a number of additional arguments highlighting problems with the evaluation, including that:

1.   The notation on the evaluation form that it had been forwarded to him on July 1, 2004, was incorrect.  Plaintiff claimed that the first time the document was given to him is when it was sent by e-mail on August 22, 2004.  AR 246.

2.   The one day that he was given to respond to the evaluation was not reasonable. AR 246.

3.   Plaintiff was rated by the incorrect chain of command.  He argued that Major Bradley was his supervisor and should have rated him.  AR 246.

4.   The evaluation's references to Plaintiff's non-compliance with height and weight restrictions were incorrect.  AR 246.

5.   The criticism that Plaintiff provided assistance to soldiers that conflicted with his responsibility to the command likely inappropriately concerned acts occurring outside of the reporting period.  AR 246.

6.      The reference in the November 5, 2005, referral memorandum falsely refers to a
        November 11, 2004, suspense date when the record is clear that he was given a
        suspense date of August 23, 2004.  AR 247.

7.      With respect to the criticism of Plaintiff's performance in planning the NGO
        conference, Plaintiff again argued that he was instrumental in the success of the
        conference.  AR 247–48.

8.      With respect to the criticism of Plaintiff's performance concerning the trip to
        Irbil, Plaintiff argued that he did not ignore orders to brief his superiors prior to
        departure or to bring someone from G2 because he was told: 1) he could brief G3
        *after* arrival in Irbil, and 2) there was no G2 personnel available to go.  AR 248.

9.      Although the evaluation form stated that LTC Fischer used an Officer Evaluation
        Report Support Form in his review as required by Army regulations, he could not
        have because Plaintiff did not complete one until after the evaluation was drafted.
        AR 250.

10.     The evaluation form listed future suitable assignments as "none" when Army
        regulations require the inclusion of three.  AR 246.

11.     The form incorrectly stated that Plaintiff did not wish to make comments on the
        report.  AR 246.

12.     The evaluation form indicated that he had been counseled by the rating officials
        when, in fact, he had not been.  AR 250.

Submission and acceptance of Plaintiff's appeal was delayed because the Iraq
Deployment Evaluation was posted to the wrong soldier's file.  AR 180.  By the time the appeal
was considered, the Review Board had received the completed report and recommendations from

the Commander's Inquiry but, apparently, they chose not to consider the Inquiry because it had not yet been legally reviewed.[4]  The Review Board did, however, contact both the rater, Major Doyle, and the senior rater, LTC Fischer.  AR 188.  The Battalion's Human Resources/Personnel officer ("Bn S1") was also consulted.  AR 189.

On February 5, 2008, the Review Board denied Plaintiff's appeal, but it nevertheless directed that the Iraq Deployment Evaluation be corrected in certain respects.  AR 184–96. Amongst its findings, the Review Board found the following:

1.  With respect to Plaintiff's claims that he was not given enough time to respond to the evaluation, the Review Board did not agree.  Based on its interviews of the relevant rating officials and Human Resources Officer, it concluded that, although the August referral memorandum gave Plaintiff a single day to respond, that time was sufficient because Plaintiff had been previously presented with the evaluation on July 1, 2004.  AR 192.  Because Plaintiff knew the contents of the evaluation since July 1, 2004, a single day's response time in August was sufficient time to explain why he needed an extension of time to properly respond.  AR 192. Nevertheless, the Review Board concluded that because the evaluation was not accompanied by a referral memorandum when it was first shown to Plaintiff on July 1, 2004, the proper referral date was August 22, not the July 1 date listed on the evaluation.  AR 192.

---

[4]    *Compare* AR 191 (Review Board decision noting that although a positive decision from a Commander's Inquiry could be used as evidence in plaintiff's appeal, the Inquiry that plaintiff initiated in 2006 did not yet have completed findings and recommendations) *with* AR 221 (post-decision e-mail stating that although the Review Board had received the Commander's Inquiry, they had declined to consider it "because it had not been legally reviewed").

2.   As to the allegedly false November 2005 memorandum, the Review Board
determined that it was prepared upon request and that although there may have
been conflict between the November 2005 date of the memorandum and the
November 2004 suspense date listed in the text of the memorandum, any such
conflict was inconsequential because Plaintiff did not submit a rebuttal at any
time.  AR 193.  The Review Board did not, however, make an explicit finding as
to Plaintiff's claim that LTC Fischer intentionally misrepresented the suspense
date provided in the August 2004 referral letter in his 2005 memorandum.

3.   The Review Board further found that the evaluation form incorrectly noted in box
II.d. that Plaintiff did not want to comment on the referred report.  AR 193.

4.   With respect to Plaintiff's argument that he was rated by the wrong chain of
command because Major Bradley was his immediate supervisor, the Review
Board concluded that he was rated according to the official rating scheme.  AR
193.  The Review Board did not, however, address Plaintiff's argument that a last-
minute change in the rating scheme violated Army regulations that require a rater
to serve in that capacity for a specified period of time.

5.   With respect to Plaintiff's claims about the height and weight data, the Review
Board concluded that, because the evidence presented indicated that Plaintiff had
been weighed two different times during the ratings period, his allegations lacked
merit.  AR 193.

6.   With respect to the Plaintiff's claim concerning the absence of three suitable
future assignments, the Review Board concluded that LTC Fischer had been given

incorrect guidance and that the evaluation should be corrected by the inclusion of three such assignments. AR 193.

7.      With respect to Plaintiff's claim that he was criticized for providing legal assistance to a soldier on the basis of acts that occurred outside the ratings period, the Review Board concluded that evidence showed that Plaintiff had provided such assistance during the ratings period, and that the assistance was viewed as a conflict of interest. AR 194–94. The Review Board did not describe, cite, or otherwise identify the evidence upon which it relied to reach this finding.

8.      With respect to Plaintiff's claim that LTC Fischer incorrectly indicated that he had received and considered a support form in preparing the evaluation when one had not been used, despite the fact that neither MAJ Doyle nor LTC Fischer recalled having used a support form in Plaintiff's case, the Review Board concluded that there was not clear and convincing evidence supporting this claim. AR 194. And in any case, the Review Board stated, the relevant Army regulation stipulates that a lack of a support form is not sufficient grounds for an appeal. AR 194. The Review Board did, however, order that the reference to having used a support form be deleted from the evaluation. AR 196.

9.      With respect to Plaintiff's claim that he was never counseled by the ratings officials, the Review Board found that Plaintiff had received face-to-face, recurring, verbal counseling. AR 194. The Review Board explained the lack of any documented counseling by opining that under the environment in which the report was rendered (*i.e.*, during a deployment in the Iraqi war zone), "routine

18

administrative functions, such as documenting counselings, became more difficult." AR 194.

10.   Finally, the Review Board found that Plaintiff's claims of racial or ethnic discrimination were not substantiated. AR 195.

As a result of these findings, the Review Board determined that there were "several administrative errors which must be corrected," and it directed that a number of changes be made to Plaintiff's evaluation, including: (1) removing the reference in part II.d. that Plaintiff did not wish to comment on the referred evaluation; (2) removing the reference in part VII.a. that a support form had been used by the senior rater in preparation of the evaluation; and (3) replacing "none" with three suitable future assignments for Plaintiff in part VII.d. AR 195–96.

### 4.   Army Board for Correction of Military Records: Docket No. 20080016454

On October 5, 2008, Plaintiff applied to the Army Board for Correction of Military Records ("ABCMR") to have his records corrected. AR 90. In his application, Plaintiff claimed that the Iraq Deployment Evaluation was motivated by vindictiveness, prejudice, and – adding for the first time one of the findings of the Commander's Inquiry – unlawful command influence. AR 90. As relief, he requested *inter alia* that the Iraq Deployment Evaluation be removed from his military personnel file, along with documents showing non-referrals and non-selection to promotions that he suffered as a consequence of the evaluation. AR 90.

In his application to the ABCMR, other than the new claim that the individuals who prepared the Iraq Deployment Evaluation were subject to unlawful command influence, Plaintiff largely reiterated the claims that he had previously raised in his request for a Commander's Inquiry and his appeal of the evaluation. AR 90–111. Those arguments are set forth above and will not be repeated here. But Plaintiff did update and add additional detail to many of his

19

arguments.  For example, to refute the Review Board's suggestion that the delay in the

Commander's Inquiry was due to Plaintiff having sent the request to the wrong command,

Plaintiff points out that a Commander's Inquiry is administrative under Army Regulation 523-

105, and that he sent his request for an inquiry to the 350th CACOM, which had administrative

control over the 415th Civil Affairs Battalion at the time.  AR 97–98.

Additionally, further supporting his argument that he was rated by the wrong officers,

Plaintiff provided information indicating that Major Bradley regularly reviewed Plaintiff's work

and that he thought he was Plaintiff's rater for the period in question, finding out that the rating

scheme had changed only late in their deployment.[5]  AR 100.  Plaintiff claims this is important

because, according to him, an officer cannot be rated by someone that has been the officer's

direct supervisor for less than 90 days.  AR 100.  Thus, without knowing when the change from

Major Bradley to Major Doyle took place – a fact which the record does not reflect – it cannot be

ascertained if the 90 day requirement was met.  AR 100.

Also, Plaintiff brought further focus to his claims about the evaluation's references to

non-compliance with height and weight requirements.  AR 101.  The Plaintiff reiterated that,

even if he was above the required weight for his height, the applicable regulations require a

calculation of a soldier's percent body fat before finding him non-compliant, and this

measurement was never done.  AR 101.  Furthermore, Plaintiff took issue with the Review

Board's conclusion that, because he had allegedly seen the Iraq Deployment Evaluation on July

1, 2004, a one-day response date in August was a reasonable amount of time in which to request

an extension of the deadline.  AR 102.  Plaintiff directed attention to the evidence that he was not

---

[5]      Plaintiff also provided an officer evaluation report support form that he signed on
August 4, 2004, indicating that plaintiff's rater was Major Bradley and that his senior rater was
Colonel Melvin Howry.  AR 123–24.

physically present in Tikrit on July 1, 2004, when he was allegedly shown the evaluation.  AR 102.

Finally, Plaintiff challenged the Review Board's conclusion that the lack of use of a Support Form was inconsequential because that is not a basis for an appeal.  AR 108.  Plaintiff points out that the cited regulations state that that it cannot be *the sole grounds* for appeal, but that he is not claiming it is the sole grounds, as that error was accompanied by numerous other procedural violations.[6]  AR 108.

In June of 2009, the ABCMR denied Plaintiff's application in full.  AR 80.  Despite Plaintiff having submitted an application consisting of 147 pages of argument and exhibits (detailed extensively above), *see* AR 91–238,[7] the ABCMR denied his application in a cursory nine-page decision, which included less than a page and a half of analysis.  AR 81–89.  The decision acknowledged that Plaintiff's request for a Command Inquiry was not handled in accordance with regulations, but it ultimately determined that Plaintiff's application for removal of the evaluation should be denied.  AR 87–89.  Without resolving a number of disputed factual and legal issues, the ABCMR seemed to adopt the Review Board's conclusion that a one-day suspense date was sufficient because Plaintiff had previously seen the evaluation on July 1, 2004, and that Plaintiff's rating chain was correct.  AR 88.  It then found that Plaintiff had "not provided any evidence which shows that the contested report did not show the considered opinions and objective judgment of the rating officials at the time of preparation," and it concluded that "[a]bsent evidence to show that the actual ratings provided on the contested report

---

[6]     Although plaintiff also made claims concerning the subsequent OER as well, they are not addressed here.  However, these arguments too should be addressed on remand.

[7]     Plaintiff's 21-page memorandum of law was accompanied by 44 exhibits.

were flawed, in error, or factually incorrect there is no basis to grant the relief requested . . . ."

AR 88.

### 5.        ABCMR Docket No. 20100018533

Subsequent to the ABCMR's denial of his application, on December 28, 2009, Plaintiff

filed a complaint in the United States Court of Federal Claims raising the same issues he had

asserted before the ABCMR.  *See* AR 49.  However, by decision of July 8, 2010, the court

remanded the matter to the ABCMR so that it could consider new evidence submitted by

Plaintiff that included a Meritorious Medal, AR 63, and two very favorable Officer Evaluation

Reports, AR 59–62, that post-dated the time period at issue in the contested Iraq Deployment

Evaluation.  AR 47–54.

The ABCMR treated the remand as request for reconsideration of the prior denial in light

of the new evidence.  AR 41.  And, on August 26, 2010, the ABCMR denied the request for

reconsideration because the new evidence submitted, all of which post-dated the relevant time

frame at issue in the contested Iraq Deployment Evaluation, did not show that the rating or

comments in the evaluation were incorrect or unjust.  AR 41–44.

### 6.        ABCMR Docket No. 20110001987

After the ABCMR denied reconsideration, the matter went back before the Court of

Federal Claims.  But shortly after its return to the court, the Army moved to have the matter

remanded to the ABCMR.  *See* AR 16.  The Army sought a narrow remand solely on the basis

that it appeared that the Iraq Deployment Evaluation "erroneously indicated that [Plaintiff] did

not comply with [the] Army weight regulation," requiring remand so that the ABCMR could

"correct this apparent error."  AR 16–18.  Without waiting for a response from Plaintiff, the

court again remanded the matter to the ABCMR.[8]  AR 37.

Upon remand, on March 22, 2011, the ABCMR again treated the remand as a request for

reconsideration, and it corrected the erroneous notation in the Iraq Deployment Evaluation that

Plaintiff had failed to meet the Army's weight and height requirements.  AR 3–9.  It also

removed the last sentence in Major Doyle's rating narrative stating that Plaintiff "was unable to

take the APFT during this period due to deployment for combat operations/contingency

operations."  AR 8.  But the ABCMR concluded that this "administrative error" did not justify

deletion of the Iraq Deployment Evaluation, and that the changes would not have changed the

outcome of Plaintiff's prior promotion non-selections.  AR 8.

### 7.  The Current Action

After the third trip to the ABCMR, Plaintiff's case returned to the Court of Federal

Claims.  There, the government renewed its motion to dismiss.  On May 31, 2012, the Court of

Federal Claims dismissed Plaintiff's claims concerning backpay and transferred to this Court the

remainder of the case seeking APA review of the ABCMR's decisions.  Once in this Court,

Plaintiff filed a second amended complaint on May 22, 2013.  Pl.'s Compl., ECF No. 7.  The

administrative record was submitted on August 9, 2013, and the parties have cross-moved for

---

[8]        The plaintiff opposed the remand because he believed the form upon which the
Army based its request for remand post-dated the proper evaluation period and, thus, could not
have been relied upon.  AR 21–27.  In the end, what is important here is not whether the Iraq
Deployment Evaluation was wrong because the body fat form indicated he was in compliance or
because there had been no body fat calculation at all.  What is important is the finding that, once
again, a portion of the form was found to be wrong.

summary judgment.[9]  *See* Def.'s Mot. to Dismiss or Summ. J., ECF No. 10; Pl.'s Mot. Summ. J.,

ECF No. 13.  Those motions are now ripe for decision.

## III.  LEGAL STANDARD

### A.  Legal Standard for Summary Judgment When Reviewing a Final Agency Action

Under Rule 56(a), summary judgment is appropriate when the pleadings and the evidence

demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In a case involving review of a final agency

action under the Administrative Procedure Act, 5 U.S.C. § 706, however, the standard set forth

in Rule 56(a) does not apply because of the court's limited role in reviewing the administrative

record.  *See Nat'l Wilderness Inst. v. U.S. Army Corps of Eng'rs*, 2005 WL 691775, *7 (D.D.C.

2005); *Fund for Animals v. Babbitt*, 903 F. Supp. 96, 105 (D.D.C. 1995), *amended on other*

*grounds,* 967 F. Supp. 6 (D.D.C. 1997).

Under the APA, the agency's role is to resolve factual issues to arrive at a decision that is

supported by the administrative record, while "the function of the district court is to determine

whether or not as a matter of law the evidence in the administrative record permitted the agency

to make the decision it did."  *Occidental Eng'g Co. v. INS*, 753 F.2d 766, 769 (9th Cir. 1985); *see*

---

[9]      The Defendant's motion is titled "Motion to Dismiss or, in the Alternative, for
Summary Judgment," and in addition to seeking summary judgment, the Defendant argues for
the dismissal of Plaintiff's Complaint under Federal Rule of Civil Procedure 12(b)(6).
Defendant contends that eleven of Plaintiff's thirteen claims include allegations of due process
violations untethered to any claims of governmental deprivation of liberty or property.  Def.'s
Mot. Summ. J. at 10.  Plaintiff points out that each of his due process violation allegations are
accompanied by allegations that the ABCMR's decision was arbitrary, capricious, and contrary
to law, Pl.'s Cross-Mot. Summ. J. at 12, and he argues that the Court need not consider the
adequacy of his due process claims independently of his claims under the APA, Pl.'s Reply at 3–
4.  Because the Court concludes that the ACMBR's decision was arbitrary and capricious in
violation of the APA, it will not address the adequacy – or lack thereof – of any constitutional
due process claims that Plaintiff may have sought to pursue.

*also Nw. Motorcycle Ass'n v. U.S. Dep't of Agriculture*, 18 F.3d 1468, 1472 (9th Cir. 1994)

("[T]his case involves review of a final agency determination under the [APA]; therefore,

resolution of th[e] matter does not require fact finding on behalf of this court. Rather, the court's

review is limited to the administrative record."). Summary judgment thus serves as the

mechanism for deciding, as a matter of law, whether the agency action is supported by the

administrative record and otherwise consistent with the APA standard of review. *See Richards v.

INS*, 554 F.2d 1173, 1177 & n.28 (D.C. Cir. 1977), *cited in Bloch v. Powell*, 227 F. Supp. 2d 25,

31 (D.D.C. 2002), *aff'd*, 348 F.3d 1060 (D.C. Cir. 2003).

**B.  Legal Standard for Judicial Review of an ABCMR Decision under the APA**

Under the APA, an agency action may be set aside if it is "arbitrary, capricious, an abuse

of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  Review of

agency actions under the "arbitrary and capricious" standard is "highly deferential" and

"presumes the agency's action to be valid." *Envtl. Def. Fund, Inc. v. Costle*, 657 F.2d 275, 283

(D.C. Cir. 1981).  In assessing an agency decision, a court reviews whether "the decision was

based on a consideration of the relevant factors and whether there has been a clear error of

judgment." *Marsh v. Or. Natural Res. Council*, 490 U.S. 360, 378 (1989) (internal quotation

marks omitted).  The scope of the Court's review under this standard "is narrow and a court is not

to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n of U.S. v. State

Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 30 (1983).  "[A] reviewing court may not set aside an

agency [decision] that is rational, based on consideration of the relevant factors and within the

scope of the authority delegated to the agency by the statute," so long as the agency has

"examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including

a 'rational connection between the facts found and the choice made.'" *Id.* at 42–43 (quoting

*Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)).  Indeed, nothing more

than a "brief statement" is necessary, as long as the agency explains "why it chose to do what it

did."  *Tourus Records, Inc., v. DEA*, 259 F.3d 731, 737 (D.C. Cir. 2001) (internal quotation

marks omitted).  If the court can "reasonably . . . discern[]" the agency's path, it will uphold the

agency's decision.  *Pub. Citizen, Inc. v. FAA*, 988 F.2d 186, 197 (D.C. Cir. 1993) (quoting

*Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974)).

     Moreover, while judicial review of an agency's actions is generally narrow and subject to

a presumption of validity, review of the ABCMR's decisions in particular under the APA is

"unusually deferential."  *See Piersall v. Winter*, 435 F.3d 319, 324 (D.C. Cir. 2006) (quoting

*Kreis v. Sec'y of Air Force*, 866 F.2d 1508, 1514 (D.C. Cir. 1989)).  Military boards such as the

ABCMR are entitled to greater deference than civilian administrative agencies.  *Calloway*, 366

F. Supp. 2d at 53 (citing *Kreis v. Air Force*, 866 F.2d 1508, 1514–15 (D.C. Cir. 1989)).  When

reviewing a decision of the ABCMR, a court's "inquiry focuses not on whether the Army was

'substantively correct' . . . but rather on whether the ABCMR's explanations for that choice

demonstrate that [a] defendant[] 'permissibly exercised [its] discretion and made a choice that is

supported by at least substantial evidence.'"  *Hill v. Geren*, 597 F. Supp. 2d 23, 29 (D.D.C. 2009)

(internal citation omitted).  A court need only find that the decision of a military review board

"minimally contains a rational connection between the facts found and the choice made."

*Frizelle v. Slater*, 111 F.3d 172, 176 (D.C. Cir. 1997) (internal quotation marks and citations

omitted).  At the same time, "[h]owever, the Board's action must be supported by reasoned

decisionmaking," *Haselwander v. McHugh*, No. 12-5297, 2014 WL 7234775, at *6 (D.C. Cir.

Dec. 19, 2014) (internal quotation marks omitted), and its decision must respond to all of a

plaintiff's non-frivolous arguments that have the potential to affect the Board's ultimate decision, *Frizelle*, 111 F.3d at 177.

"An officer's OERs are presumed to be 'administratively correct' and to '[r]epresent the considered opinions and objective judgment of the rating officials at the time of preparation.'" *Cone v. Caldera*, 223 F.3d 789, 792 (D.C. Cir. 2000) (quoting Army Regulation 623-105, at ¶ 5-32);[10] *see also Musengo v. White*, 286 F.3d 535, 538 (D.C. Cir. 2002). "An officer seeking a correction must prove 'clearly and convincingly' that the 'presumption of regularity' in the preparation of administrative records should not apply, and that '[a]ction is warranted to correct a material error, inaccuracy, or injustice." *Cone*, 223 F.3d at 792–93 (quoting Army Regulation 623-105, at ¶ 9-7(a)); *see also Powers v. Donley*, 844 F. Supp. 2d 65, 74 (D.D.C. 2012). In the context of challenges to officers' evaluations, the unusually deferential standard of review set forth above "is calculated to ensure that the courts do not become a forum for appeals by every soldier dissatisfied with his or her ratings, a result that would destabilize military command and take the judiciary far afield of its area of competence." *Cone*, 223 F.3d at 793; *see also Chamness v. McHugh*, 814 F.Supp.2d 7, 13 (D.D.C. 2011).

## IV.  ANALYSIS

### A.  The Presumption of Regularity

In this case, Plaintiff argues that he has presented sufficient evidence to overcome the presumption of regularity, *see* Cross-Mot. for Summ. J. at 8, 22, and the Court agrees.[11] The

---

[10]     The quoted language is the same as in a subsequent version - Army Regulation 623-105, at ¶ 6-6.

[11]     Plaintiff argues that to overcome the presumption of regularity at the ABCMR-level, he needed only a preponderance of the evidence. He claims that the clear and convincing evidence standard required by the OSRB in cases where an officer seeks to remove an evaluation

Review Board relied heavily on the presumption of regularity when assessing Plaintiff's many challenges to the Iraq Deployment Evaluation. *See, e.g.,* AR 194–95 ("The Board did not find . . . sufficiently clear and convincing evidence that the rating officials failed to comply with the regulatory procedures for support forms. . . . The materials . . . were not sufficient to overcome the presumption of regularity to remove the OER."). The ABCMR decision, in turn, appears to rely heavily on the Review Board's conclusions.[12] But nothing about the preparation of the Iraq Deployment Evaluation and what followed was regular.

The problems with the Iraq Deployment Evaluation are numerous and well-documented. First, the Commander's Inquiry, the Department of Justice Attorneys who requested a remand, and the ABCMR on remand all concluded that the height and weight information in the Evaluation was erroneous, as was the entry indicating that Plaintiff was not in compliance with Army body composition regulations. AR 8, 18, 170. Second, the Commander's Inquiry concluded that despite LTC Fischer indicating that he had used a support form in preparing Plaintiff's evaluation, that indication was not correct, AR 169, and the Review Board ordered that the "yes" indication be removed.[13] Third, the Review Board found that the Evaluation

is inapplicable to ABCMR review. Because the Court is satisfied that Plaintiff has met the clear and convincing evidence standard in this case, it will not address the matter further.

[12]      Although the ABCMR decision does not specifically identify the evidence on which it relied in reaching its conclusions, a review of the "consideration of evidence" portion of the opinion makes clear that a number of the decision's conclusions are based on the OSRB's earlier findings. For example, the only evidence mentioned in the decision that supports the ABCMR's finding that Plaintiff's rating chain was correct and that he "was provided the contested report on two occasions," are the OSRB findings. *See* AR 85, 88.

[13]      The Review Board could not find evidence to confirm whether a support form was or was not provided to LTC Fischer – plaintiff said it was not, while LTC Fischer said he could not remember – but it nevertheless ordered that plaintiff's evaluation be corrected by removing the indication that a support form had been received and considered by LTC Fischer. AR 194, 196. The ABCMR reviewed the corrected version of plaintiff's OER and did not analyze the merits of plaintiff's claim that the evaluation was substantively flawed because a support form had not been used. AR 84–88.

erroneously stated that the referral date was July 1, 2004, when it should have been August 22, 2004.  AR 192.  Fourth, the Review Board found that the evaluation form incorrectly noted that Plaintiff did not want to comment on the referred report.  AR 193.  Fifth, the Review Board concluded that the evaluation erroneously listed no future assignments suitable for Plaintiff.  AR 193.  And sixth, as found by the Commander's Inquiry, a later November 2005 memorandum prepared by LTC Fischer erroneously stated that the suspense date had been November 4, 2004, when the referral e-mail reflected a one-day suspense date of August 23, 2004.  AR 169, 176.[14]

Additionally, the Review Board was unable to find any documentation to support the rating officials' position that they counselled Plaintiff in accordance with Army regulations.  *See* AR 194.  It nevertheless chose to credit the rating officials' statements over those of Plaintiff, opining that "under the environment in which [the evaluation] was rendered, the routine administrative functions, such as documenting counseling, became more difficult."  AR 194.[15] The Review Board did not, however, explain how it could believe both that there had been interference with administrative functions and that the presumption of administrative regularity should apply.

When Plaintiff sought to challenge the Iraq Deployment Evaluation by requesting a Commander's Inquiry six days after he received the referral e-mail, that too resulted in irregularity, rather than regularity.  Although Army regulations require that the Commander's Inquiry be forwarded to Department of the Army Headquarters not later than 120 days after the

---

[14]     Ironically, after preparing the evaluation that was later found to contain a litany of errors, the Army posted it to the wrong soldier's file.

[15]     *Cf. Frizelle*, 111 F.3d at 178 (holding that although the Board is ordinarily "entitled to presume that statements in an OER are fair and accurate unless an applicant presents specific evidence to rebut that presumption," it was unreasonable to expect a plaintiff who claimed that he was not counseled to produce a counseling-related form that his supervisor never prepared).

OER's thru date, in Plaintiff's case, the Inquiry did not begin until more than 830 days (over 27 months) after his initial request, *see* AR 172, 256, and it was not completed until 51 days (over 7 weeks) later. The Commander's Inquiry itself found that that the delayed Inquiry violated Plaintiff's procedural due process rights. AR 169. And when the extremely critical Commander's Inquiry was finally issued, the Review Board ignored it without any official explanation.[16]

Despite these many irregularities, the ABCMR neither held that Plaintiff had overcome the presumption of regularity nor explained how the presumption could continue to be applied in such circumstances. Given the ABCMR's finding that the Commander's Inquiry "was not handled in accordance with applicable regulation," the results of the very critical Commander's Inquiry recommending that the Iraq Deployment Evaluation be deleted, the numerous errors in the Iraq Deployment Evaluation found by the Review Board and the ABCMR, and the many corrections to the evaluation that have been required to date, the Court finds that Plaintiff has overcome the presumption of regularity by clear and convincing evidence, and the matter is remanded to the ABCMR to reassess Plaintiff's claims without application of such presumptions. *See Wagner v. Geren*, 614 F. Supp. 2d 12, 20 (D.D.C. 2009) ("In fact, the evidence, including

---

[16]     Despite having received the findings and recommendations of the Command Inquiry prior to issuing its decision, AR 171, 221, the Review Board decision nevertheless did not consider the results of the Inquiry in its analysis, stating that "command initiated a CI in late 2006 but . . . its findings and recommendations were never completed." AR 191. Plaintiff subsequently heard informally that the Review Board saw the Inquiry prior to reaching their decision, but they felt they could not consider it because it had not yet been legally reviewed. AR 221. Regardless of whether the Review Board's decision to ignore the Inquiry was correct as a matter of law – a topic not addressed by the ABCMR – a legal review of the Inquiry subsequently confirmed that is findings were supported by evidence and that the recommendations were consistent with the findings. AR 183. This calls into question the ABCMR's reliance on the Review Board's conclusions, as those conclusions do not seem to have been fully informed. *See* AR 191 (Review Board opinion recognizing that a positive decision from the Commander's Inquiry could be used as additional evidence in Plaintiff's OER appeal).

the miscalculation of the plaintiff's service time, the incorrect statutory authority and the missing

form, indicates that the Army's administrative processes were not sworn to accuracy as applied

to the plaintiff and are, thus, not entitled to a presumption of regularity.").  Because the

presentations below have been premised on the application of such presumptions, either party, if

they desire, should be permitted to supplement the record with additional evidence.

### B.  Plaintiff's Unaddressed Arguments

The misapplication of the presumption of regularity is not the only error that must be

corrected on remand.  Indeed, the bulk of Plaintiff's argument before this Court is dedicated to

highlighting numerous factual and legal arguments that he presented to the ABCMR, but that the

ABCMR's decision failed to resolve.  The government, on the other hand, contends that the

ABCMR's decision adequately addressed Plaintiff's arguments by identifying them and

concluding that they were inadequate.  Finding that the ABCMR failed to respond to a number of

Plaintiff's non-frivolous claims that could have affected its decision, the Court holds that the

ABCMR's decision was arbitrary and will remand so that it may consider and respond to all of

Plaintiff's potentially meritorious arguments.

It is well-established that a decision by the ABCMR that fails to address a plaintiff's non-

frivolous, material arguments is arbitrary.  *See, e.g.*, *Frizelle*, 111 F.3d at 177 (holding that the

Board's failure to respond to two arguments that were facially non-frivolous and that could have

affected the matter's ultimate disposition was arbitrary); *Poole v. Harvey*, 571 F. Supp. 2d 120,

126 (D.D.C. 2008) ("[B]ecause [plaintiff's] argument to the ABCMR was non-frivolous and

potentially meritorious and the ABCMR failed to address it, this court has no choice but to

determine that the ABCMR's decision was arbitrary and capricious.").  Critically, it is not

enough for the ABCMR simply to identify a plaintiff's non-frivolous arguments without

responding to them, either by addressing the arguments' merits or explaining why the merits

need not be addressed. *Rudo v. Geren*, 818 F. Supp. 2d 17, 26–27 (D.D.C. 2011) (holding that

ABCMR's decision was arbitrary where it contained a vague acknowledgment of plaintiff's

argument unaccompanied by any discussion of the argument or explanation as to why it need not

be addressed).

In this case, as in *Rudo*, the ABCMR acknowledged many of Plaintiff's arguments only

to fail to address or resolve those arguments in any discernible way in its analysis. For example,

with respect to the issue of the one-day suspense date, the ABCMR adopts the Review Board's

conclusion that one day was sufficient because Plaintiff had previously seen the evaluation on

July 1, 2004. AR 85, 88. But the ABCMR does not even mention, much less grapple with,

Plaintiff's evidence that he was not physically present in Tikrit on July 1, 2004, when he was

allegedly shown the evaluation. *Id.*; *see also Roberts v. Harvey*, 441 F. Supp. 2d 111, 122

(D.D.C. 2006) (remanding where the ABCMR "failed to grapple with what appears to be a

substantial issue"); *Mori*, 917 F. Supp. 2d at 64 ("By not discussing plaintiff's evidence, the

Secretary leaves plaintiff and the Court to scratch their heads as to why the Secretary found

plaintiff's evidence unpersuasive.").

Neither does the ABCMR engage with Plaintiff's argument that LTC Fischer's

November 2005 memorandum stating that Plaintiff had failed to respond by a November 2004

suspense date intentionally misrepresented the one-day suspense date given to Plaintiff in August

2004.[17] Indeed, the ABCMR's decision found that Plaintiff's "referral memorandum contained a

---

[17]    Defendant argues that Plaintiff waived this argument as well as the argument that
the rating officials misrepresented the referral date by stating that it was July 1 and not August
22, 2004. Def.'s Mot. Summ. J. at 14–15, 31–32, 35–36. Specifically, Defendant argues that
this Court should not consider the claims because Plaintiff presented them to the ABCMR to
rebut the presumption of regularity and to seek removal of the entire OER, and he did not request

suspense date of 'S: 23 August 2004,'" but four paragraphs later, the same decision finds that

Plaintiff "failed to respond to the referred contested report by the suspense date of 4 November

2004." AR 83.  The ABCMR made no attempt to reconcile the two conflicting findings or to

suggest that the direct conflict between the two findings is in any way insignificant.  *Cf. Coburn*

*v. McHugh*, 679 F.3d 924, 934 (D.C. Cir. 2012) ("These various statements from the ABCMR

decision, read together, are incomprehensible.").  This omission is particularly concerning given

the ABCMR's conclusion that the evaluation reflected "the considered opinions and objective

judgment of the rating officials," AR 88, and the fact the Army has already ordered that the

evaluation be corrected to remove another apparent misstatement by LTC Fischer: that he

received and considered a support form in his review.

 Similarly, the ABCMR did not respond to Plaintiff's argument that the Commander's

Inquiry showed that the contested evaluation "seem[ed] to have been influenced by intense

pressure by COL Kamena" on the rating officials that interfered with the requirement that raters

be objective and unbiased.  *See* AR 97, 174.[18]  Defendant argues that "intense pressure" is not

necessarily contrary to Army regulations, and that perhaps the ABCMR discredited the statement

because it was in the "narrative" section of the Inquiry or because it was accompanied by

qualifying language.  *See* Def.'s Mot. Summ. J. at 19–22.  Whatever the merits of these post-hoc

---

partial correction of the evaluation to remedy these specific errors.  *Id.*  As Defendant's own
argument acknowledges, however, Plaintiff *did* argue to the ABCMR both that LTC Fischer
intentionally misrepresented his suspense date in the 2005 memorandum and that referral date in
his evaluation should have been August 22 rather than July 1.  *See id.*  The Court therefore finds
that Defendant's waiver arguments as to these claims are without merit and that Plaintiff's claims
of error were properly before the ABCMR.

 [18] Additionally, although the ABCMR characterizes the Commander's Inquiry as
recommending that the evaluation "be removed based on the fact that it was not processed in a
timely manner," AR 87, it is not clear from the decision why the ABCMR adopted such a narrow
view of the basis for the Inquiry's recommendation, which followed a list of seven findings, only
one of which mentioned the delay in processing the Commander's Inquiry request.  *See* AR 169–
70.

justifications, they were not contained in the ABCMR's decision and thus cannot be considered by this Court.  *See Poole*, 571 F. Supp. 2d at 126 ("[A] court reviewing an agency's decision must judge the propriety of agency action solely by the grounds invoked by the agency.  Because the [defendant's] explanation . . . is neither in the ABCMR decision nor in the administrative record, it is an improper *post hoc* justification." (internal quotation marks and citations omitted)).

Additionally, the ABCMR concluded that Plaintiff was rated by the correct supervisor because Major Bradley conceded that he was no longer Plaintiff's rater and because the rating scheme supplied to the Review Board reflected the same rating scheme as that by which Plaintiff was rated.  AR 88.  However, that conclusion completely and arbitrarily ignores Plaintiff's argument that Army regulations require that raters supervise a rated officer for at least 90 days, and that because the Army – contrary to its own regulations – did not inform him when the change in his rating scheme occurred, it was impossible to determine whether LTC Fischer had supervised Plaintiff for the requisite 90 days.  *See Epstein v. Geren*, 539 F. Supp. 2d 267, 277 (D.D.C. 2008) ("[T]he failure of a corrections board to respond to arguments raised by a plaintiff, which do not appear frivolous on their face and could affect the board's ultimate disposition, is arbitrary.").  Given the numerous other errors in the evaluation that have come to light, the use of potentially unqualified raters is not something that the Court can ignore.

Thus, on remand, the ABCMR must reconsider Plaintiff's case and, without application of any presumption of regularity, reassess Plaintiff's claims, specifically addressing the following questions:

1) Whether Plaintiff was shown the proposed evaluation on July1 (all indications are that the raters claim to have done this in person),[19] given that the documentation indicates Plaintiff was no longer physically present in Tikrit;[20]

2) If the ABCMR on remand concludes that Plaintiff was not shown the proposed evaluation on July 1, it must then assess whether a one day suspense date is reasonable.  In making this assessment, it must take into consideration that Plaintiff was deployed in a war zone and heed the Review Board's conclusion that, in a war zone, "routine administrative functions, such as documenting counselings, became more difficult."  *See* AR 194.  And, if it does thus conclude that Plaintiff was not shown the proposed evaluation on or about July 1, it must also assess the raters' credibility considering they made specific and unequivocal statements that Plaintiff was shown the evaluation then.

3) Whether there is any evidence concerning when Plaintiff's rating chain changed from Major Bradley to those who prepared the Iraq Deployment Evaluation, and whether those raters had been in place for the 90-day period that Plaintiff claims is necessary.  This assessment must be made without any presumption and should address whether a change of rater evaluation had to be prepared as a result.

4) Additionally, the ABCMR must address Plaintiffs' arguments concerning the subsequent OER that have never been thoroughly addressed.[21]

---

[19]     For example, the battalion SI told the Review Board that he overheard plaintiff's belligerent tone and behavior and witnessed his abrupt departure after the meeting to sign the report.  AR 189.

[20]     To be fair, the raters did not explicitly say that Plaintiff was shown the evaluation on July 1 (LTC Fischer said it was "late June or early July," AR 188), but that was the conclusion of the Review Board and the ABCMR adopted it.

[21]     The ABCMR should consider whether Plaintiff's argument that the Iraq Deployment Evaluation should have been a Relief for Cause OER is properly before it given that it has never previously been raised.

But the Court wishes to make clear that, despite the numerous errors set forth above, the Court does not take a position on the substance of the rating Plaintiff received on the basis of his performance and the Evaluation's narrative describing that performance.  If, on remand, the ABCMR determines, without application of any presumption of regularity, that the numerous procedural errors discussed above do not require deletion of the Iraq Deployment Evaluation, then it must assess the substance of the performance evaluation, again, without any presumptions.  And the record evidence is decidedly mixed.

The substance of the negative evaluation is focused on three issues: 1) a conflict of interest caused by Plaintiff's provision of legal assistance; 2) Plaintiff's role in the success of the NGO conference; and 3) Plaintiff's failure to follow orders in relation to the CPA-N visit.

Plaintiff has identified, and the record reflects, one documented instance in which his superiors complained about a purported conflict of interest.  That instance clearly took place *after* the evaluation period had concluded but before the evaluation was completed by Plaintiff's raters.  *See* AR 288–91.  But, without describing the evidence relied upon, both the Review Board and the ABCMR concluded that the post-review period incident was not the instance reflected in the Iraq Deployment Evaluation.  Instead, the Review Board concluded that conflicts of interest occurred during the reporting period, and the ABCMR appears to have implicitly adopted that conclusion.  But the record reflects no specific instances that occurred within the review period.  On remand, the ABCMR must further explain the basis for its conclusion after a searching review of the evidence and without the application of the presumption of regularity.

As to the NGO conference, the record does not contain evidence, either positive or negative, about the Plaintiff's performance in putting on the Sulaymaniyah conference.  The Plaintiff's evidence indicates that he was involved in putting on the conference and that the

conference was well-received.  But unless the Kirkuk NGO conference referenced in Major

Anthony Bradley's letter of support, AR 121–22, is the same Sulaymaniyah NGO conference at

issue in the contested OER, it appears that the administrative record does not contain evidence of

Plaintiff's specific contributions to the success of the conference.[22]  The fact that Plaintiff was

involved in planning the conference and that it was successful, standing alone, does not

contradict the raters' criticisms that the conference was successful despite Plaintiff's efforts, not

because of them.   On remand, the ABCMR must further explain the basis for its conclusion,

based on a searching review of the evidence without the application of any presumptions.

As to the CPA-N Visit, the evidence in the record is conflicting.  Plaintiff supports his

position that the negative comments are attributable to conflicting agendas and a personal

vendetta, not poor performance on his part, with statements from CPA-personnel.  *See* AR 125–

128.  But, by all accounts, there was a powerful conflict between the CPA-N personnel and

Plaintiff's chain of command.  *See* AR 125–129.  Thus, the fact that individuals with counter-

interests support Plaintiff's position may actually strengthen the raters' position that Plaintiff

failed to follow his command's orders.  But, the ABCMR decision does not engage with

Plaintiff's evidence that he may have been given conflicting orders on who to brief and when

such briefing should occur (before or after departure).  Accordingly, the ABCMR must further

explain the basis for its conclusion based on a searching review of the evidence without the

application of any presumptions.

Finally, if the ABCMR reaches conclusions that counter specific statements made by the

raters (for example, that LTC Fischer did not receive and consider Plaintiff's support form in his

---

[22] Plaintiff's other letters of support note that he worked on the conference and ensured communication between the appropriate parties, AR 125, and that he "advised the Battalion Commander on the progress of the conference in a timely manner," AR 223.  However, neither letter expressly connects Plaintiff's efforts to the conference's success.

review, or that Plaintiff could not have been shown the proposed evaluation on July 1 despite the

raters' statements to this effect), it must specifically assess that rater's credibility on all issues,

not just that one.

## V.  CONCLUSION

For the foregoing reasons, the Court grants summary judgment in favor of Plaintiff and

remands the matter to the ABCMR to reassess Plaintiff's claims within the next 180 days.  The

Court shall retain jurisdiction over this matter while the remand is pending.  An Order consistent

with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  January 15, 2015                                    RUDOLPH CONTRERAS
                                                            United States District Judge